```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

JAMAR JONES, 06-B-0358,

        Petitioner,

    -v-                                       09-CV-6045(MAT)
                                              **ORDER**

JAMES CONWAY,

        Respondent.
_____

## I. Introduction

*Pro se* petitioner Jamar T. Jones ("petitioner") has filed a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Erie County Court of Murder in the Second Degree (N.Y. Penal L. § 125.25(1)), Attempted Murder in the Second Degree (N.Y. Penal L. §§ 110.00, 125.25(1)), Assault in the Second Degree (N.Y. Penal L. § 120.10(1)), and Criminal Possession of a Weapon in the Second Degree (former N.Y. Penal L. § 265.03(2)) following a jury trial before Judge Shirley Troutman. Petitioner was sentenced to an aggregate term of imprisonment of 50 years to life.

## II. Factual Background and Procedural History

On May 2, 2005, petitioner shot Courtney Meadows ("Meadows") and James Webster ("Webster") following a confrontation. Meadows was shot in the head, the back, and twice in the chest, and subsequently died from his injuries. Webster survived the attack, and testified at petitioner's trial. Two witnesses to the shooting,

Ronald Showers ("Showers") and Nathaniel Harris ("Harris"), identified petitioner in a police photo array and also testified for the prosecution.

Over defense counsel's objection, the trial court permitted the prosecution to introduce evidence that petitioner had assaulted Harris one to two weeks prior to the incident. In addition, the court overruled counsel's objection to the admission into evidence of Meadows' autopsy photographs. Trial Tr. 377-79, 388, 400-05, 463-70, 472, 482-83, 553, 646, 654, 650.

A Wade[1] hearing was held on August 3 and August 18, 2005, during which Buffalo detectives testified that they showed Showers, who had witnessed the shooting, numerous photographs of persons named Jerome and Jamar. Showers identified the 56th photograph shown to him as petitioner. Wade Hr'g Tr. 5-8, 18-19, 28-29.

Petitioner did not testify in his own behalf at trial. Eyewitness Robert Kuczka, testified for the defense.

On October 7, 2005, petitioner was found guilty of all four counts of the indictment and was subsequently sentenced on January 18, 2006, to aggregate terms of imprisonment totaling 50 years to life. Sentencing Tr. 9-10.

Through counsel, petitioner filed a brief with the Appellate Division, Fourth Department, in which he raised the following

---

[1] See United States v. Wade, 388 U.S. 218 (1967) (the due process clause precludes states from obtaining evidence through unduly suggestive identification procedures).

issues for appeal: (1) the trial court denied petitioner a fair trial by allowing the prosecution to introduce uncharged crimes; (2) petitioner was denied a fair trial when the court allowed the prosecution to introduce prejudicial photographs into evidence; (3) the pre-trial identification procedure was unduly suggestive; and (4) the sentence was unduly harsh and excessive and the sentencing court failed to consider all relevant factors in pronouncing petitioner's sentence. See Pet'r Appellate Br. 7-32. The Appellate Division unanimously affirmed the judgment of conviction on September 28, 2007. People v. Jones, 43 A.D.3d 1296 (4th Dept. 2007), lv denied, 9 N.Y.3d 991 (2007).

This habeas petition followed in which petitioner has asserted the following grounds for relief: (1) denial of a fair trial by the trial court's ruling allowing evidence of uncharged crimes; (2) denial of a fair trial by the admission of inflammatory autopsy photographs; and (3) denial of due process by an unduly suggestive pre-trial photo array.[2] Petition ("Pet.") ¶ 12; Traverse ("Trav.") pp. 1-19. For the reasons that follow, the Court finds that petitioner is not entitled to the writ, and the petition is dismissed.

---

[2] Although the petition contains a fourth ground, it does not state a distinct ground for relief. Rather, it refers the Court to petitioner's brief on appeal for the applicable grounds for relief. See Petition, ¶ 12, Ground Four.

**III. Discussion**

    **A.  General Principles Applicable to Federal Habeas Review**

        **1.  Standard of Review**

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. See 28 U.S.C. § 2254(d)(1), (2); Williams v. Taylor, 529 U.S. 362, 375-76 (2000).

    **B.  Merits of the Petition**

        **1.  Admission of Uncharged Crimes**

Petitioner first argues that the trial court deprived petitioner of a fair trial by allowing testimony of his uncharged crimes.[3] Pet. ¶ 12, Ground One; Trav. at 5-6.  Specifically, petitioner challenges the admission of evidence that petitioner had a physical altercation with eyewitness Nathaniel Harris approximately ten to fourteen days before the shooting. On that point, the Appellate Division held that the evidence concerning the prior altercation was relevant for establishing petitioner's motive

---

[3] See People v. Molineux, 168 N.Y. 264 (1901) (evidence of prior crimes may be admissible to show motive, intent, absence of mistake or accident, common scheme or plan, or identity of person on trial).

and identity, and that its probative value outweighed its prejudicial effect. Jones, 43 A.D.3d at 1297.

Because the United States Supreme Court has declined to determine whether use of uncharged crimes would violate due process, the Appellate Division's rejection of petitioner's argument cannot be considered an unreasonable application of clearly established Supreme Court precedent. See Jones v. Conway, 442 F.Supp.2d 113 (S.D.N.Y. 2006) (citing Estelle v. McGuire, 502 U.S. 62, n.5 (1991). Moreover, "[a] decision to admit evidence of a criminal defendant's uncharged crimes or bad acts under Molineux constitutes an evidentiary ruling based on state law." Sierra v. Burge, 06 Civ. 14432, 2007 WL 4218926, *5 (S.D.N.Y. Nov.30, 2007). As such, state court Molineux rulings are generally not cognizable on habeas review. See Roldan v. Artuz, 78 F.Supp.2d, 260, 276 (S.D.N.Y. 2000). Rather, federal courts reviewing evidentiary matters may issue a writ of habeas corpus only if the petitioner demonstrates that the alleged evidentiary error violated a constitutional right and that the error "was so extremely unfair that its admission violates fundamental conceptions of justice." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (internal quotation omitted). "Where the prejudicial evidence is 'probative of [an] essential element' in the case, its admission does not violate the defendant's right to due process." Dunnigan, 137 F.3d at 125 (quoting Estelle, 502 U.S. at 69). "For the erroneous

admission of other unfairly prejudicial evidence to amount to a denial of due process, the item must have been 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" Id. (quoting Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992) and citing Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985) (evidence must be "crucial, critical, highly significant")).

Under New York law, evidence of prior bad acts is admissible to "prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial." Molineux, 168 N.Y. at 293.

Prior to trial, a hearing was held pursuant to People v. Ventimiglia, 52 N.Y.2d 350 (1981), in order to determine whether evidence of petitioner's prior altercation with Harris would be admissible as direct evidence. The trial court ruled that the evidence was admissible under "a number" of the Molineux factors. Trial Tr. 7. Specifically, the evidence was relevant to petitioner's motive for the shooting, as well as his identity. See People v. Fowler, 45 A.D.3d 1372 (4th Dept. 2007). Petitioner's assertion that the evidence proved only a propensity for violence is therefore unpersuasive.

The Appellate Division determined that the trial court properly admitted the evidence under New York evidentiary law as relevant to the perpetrator's motive and identity. As such, petitioner's claim falls short of establishing an error under state law and also does not establish that his constitutional rights were violated by the trial court's admission of that evidence. See Green v. Herbert, No. 01CIV.11881, 2002 WL 1587133, at *12 (S.D.N.Y. Jul.18, 2002) ("The first step in this analysis is to determine whether the state court decision violated a state evidentiary rule, because the proper application of a presumptively constitutional state evidentiary rule would not be unconstitutional.") (citing Brooks v. Artuz, 97 Civ. 3300, 2000 WL 1532918 at *6, 9 (S.D.N.Y. Oct.17, 2000) (petitioner did not demonstrate an error under state evidentiary law, "much less" an error of constitutional magnitude); Jones v. Stinson, 94 F.Supp.2d 370, 391-92 (E.D.N.Y.) (once the habeas court has found that the state court ruling was not erroneous under state law, there is no need to apply a constitutional analysis), rev'd on other grounds, 229 F.3d 112 (2d Cir. 2000)). This claim, therefore, must be dismissed.

### 2. Admission of Autopsy Photographs

Similarly, petitioner's contention that the admission of one of the victim's autopsy photographs deprived him of a fair trial fails on the merits. See Pet. ¶ 12, Ground Three. In rejecting petitioner's argument on the merits, the Appellate Division found

that, "the three photographs at issue were relevant to prove the identity of the murder victim, to show an intent to kill and to corroborate the Medical Examiner's testimony concerning the cause of death, and thus the court did not abuse its discretion in admitting the photographs in evidence." Jones, 43 A.D.3d at 1298 (citations omitted).

Under longstanding New York evidentiary law, it is matter of the trial court's discretion as to whether to introduce photographs of homicide victims. See People v. Wood, 79 N.Y.2d 958, 960 (1992). ("The general rule is ... [that] photographs are admissible if they tend 'to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered.' They should be excluded 'only if [their] sole purpose is to arouse the emotions of the jury and to prejudice the defendant[.]'") (quoting People v. Pobliner, 32 N.Y.2d 356, 369-70 (1973)) ("[P]hotographs of the deceased are admissible if they tend to prove or disprove a disputed or material issue ... even though they portray a gruesome spectacle and may tend to arouse passion and resentment against the defendant in the minds of the jury.") (quotation omitted). Because the prosecutor sought to introduce the photographs to establish the identity of the deceased as Meadows, the photographs were properly admitted under New York law.

Moreover, even if the photographs were improperly admitted under state law, admission of the photographs did not deprive petitioner of a fundamentally fair trial. As stated earlier, "[w]here the prejudicial evidence is 'probative of [an] essential element' in the case, its admission does not violate the defendant's right to due process." Dunnigan, 137 F.3d at 125 (quoting Estelle, 502 U.S. at 69). In the instant case, causing the death of a person is an element of second-degree murder, as is intent to kill. See N.Y. Penal Law § 125.25(1). Therefore, displaying the photographs of the victim's wounds, which were allegedly caused by a gun shot and led to his death, was highly probative of intentionally causing the death of a person as required by the statute. Flores v. Fischer, No. CV-05-1970(FB); 2006 WL 385317, at *4 (E.D.N.Y. Feb.17, 2006) (finding that admission of autopsy photographs, including one showing a large opening in victim's head, did not violate petitioner's due process rights); Franco v. Walsh, No. 00 CIV. 8930AGSJCF, 2002 WL 596355, at *7-8 (S.D.N.Y. Apr.17, 2002) (denying habeas claim where state court permitted the prosecutor to display severely injured victim to jury because "the extent of the victim's injuries was clearly relevant"). Accordingly, the Appellate Division's resolution of this issue was neither contrary to, nor an unreasonable application of, clearly established federal law.

### 3. Unduly Suggestive Identification Procedure

Petitioner next contends that a series of photographs shown to prosecution witness Showers was so impermissibly suggestive that it tainted Showers' in-court identification of petitioner. Pet. ¶ 12, Ground Two. The Appellate Division held that the photo array was not unduly suggestive. Jones, 43 A.D.3d at 1298.

In his memorandum in opposition to the habeas petition, respondent submits that this claim is unexhausted because petitioner failed to raise the issue in his application to the New York Court of Appeals for discretionary review. Resp't Mem. at 8. The petitioner has correctly pointed out that respondent's allegation is made in error. Trav. at 7. The respondent's exhibits, which include petitioner's leave letter to the New York Court of Appeals, indicate that petitioner sought review of the identification claim by state's highest court, see Resp't Ex. C at 3, and is therefore properly exhausted for purposes of habeas review. See Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994). Accordingly, the Court will proceed to evaluate petitioner's claim on the merits.

A criminal defendant's right to due process "includes the right not to be the object of suggestive police identification procedures that create 'a very substantial likelihood of irreparable misidentification.'" United States v. Concepcion, 983 F.2d 369, 377 (2d Cir. 1992) (quoting Simmons v. United States, 390

U.S. 377, 384 (1968)); accord, e.g., Neil v. Biggers, 409 U.S. 188, 198 (1972). The Supreme Court has established a two-step inquiry for evaluating the constitutionality of in-court identification testimony based on out-of-court identification procedures. E.g., Neil v. Biggers, 409 U.S. at 198. The inquiry requires a determination of whether the identification process was impermissibly suggestive and, if so, whether it was so suggestive as to raise a very substantial likelihood of irreparable misidentification. Id.; accord, e.g., United States v. Wong, 40 F.3d 1347 (2d Cir. 1994). Even if the pretrial identification procedure is found to have been unduly suggestive, the trial court nevertheless may allow in-court identification testimony provided that the identification is independently reliable. Manson v. Brathwaite, 432 U.S. 98 (1977); accord, e.g., Jarrett v. Headley, 802 F.2d 34, 42 (2d Cir. 1986).

With respect to whether a photographic array is inherently and unduly suggestive, the Second Circuit has explained,

> The fairness of a photographic array depends on a number of factors, including the size of the array, the manner of presentation by the officers, and the array's contents. If there is nothing inherently prejudicial about the presentation, such as use of a very small number of photographs . . . or the use of suggestive comments, the "principal question is whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to suggest to an identifying witness that

>   [that person] was more likely to be the
>   culprit[.]"

Concepcion, 983 F.2d at 377 (quoting Jarrett v. Headley, 802 F.2d 34, 41 (2d Cir. 1983) (internal quotation omitted); other citations omitted) However, due process does not require that "all of the photographs in the array be uniform with respect to a given characteristic." Jarrett, 802 F.2d at 41.

Testimony at the pre-trial Wade hearing established that Showers told police that the assailant was a man named "Jerome" or "Jamar". Wade Hr'g Tr. 5. In response, Buffalo detectives conducted a photographic identification procedure in which Showers viewed over fifty pictures of African-American males named Jerome or Jamar. Showers selected petitioner's photograph, the 56th photograph in the array, as the perpetrator of the crime. Id. at 6-8, 12, 18-19. The suppression court ruled that the subsequent in-court identification was admissible because police did not know how the suspect was at the time, and the process therefore could not have been suggestive. See Dec. & Order, Erie County Court (Troutman, J.) No. 05-1009, dated 9/14/2005 at 2-3. The court went on to state that "one of the photos in the set of 56 looks very similar to defendant" and that, because Showers gave the police a first name of the possible perpetrator, he had an independent basis for the identification. Id. Here, over fifty photos were presented to Showers, and, although they were not all similar in appearance, the sheer number of photographs makes the danger of misidentification

minimal. See Garry v. Greiner, No. 01 Civ. 0848(AKH), 2003 WL 21436217, *4 (S.D.N.Y. June 19, 2003); See, e.g., U.S. v. Thai, 29 F.3d 785, 809 (2d Cir. 1994) (finding that pretrial photographic identification procedures were not unduly suggestive where array used for identifications contained more than 50 photographs, nearly all of which were of Asian males of similar age and had hair color and array was presented in neutral fashion). Moreover, the detectives used a general array, and could not have drawn the witness' attention to petitioner's photograph because they did not have a suspect yet and did not know what petitioner looked like. E.g., Garry v. Greiner, 2003 WL 21436217 at *4 ("Furthermore, the record does not indicate that the police made any comments or took any actions that emphasized the photograph of the petitioner during either viewing. In fact, the petitioner was not yet a suspect at the time of [the witness'] initial viewing."). Finally, the record demonstrates that there were no suggestive comments or actions made by detectives during the procedure. Wade Hr'g Tr. 6. Accordingly, the Court cannot find that the procedure at issue was unnecessarily suggestive. The Appellate Division's resolution of this claim was therefore not contrary to, or an unreasonable application of federal law, and this claim must be dismissed.

### 4. Sentencing Claims

Petitioner's fourth ground for relief reads, "[a]ll grounds upon which Petitioner is entitled to relief as contained in the

Appeal Brief attached hereto." Pet. ¶ 12, Ground Four. Presumably, petitioner seeks to point the Court's attention to his brief on appeal, which contains an additional claim alleging that the trial court abused its discretion in ordering petitioner's sentences to run consecutively. See Pet'r App. Br. 26-31.

In the instant case, petitioner was sentenced as a second felony offender to an indeterminate term of incarceration of 25 years to life on the murder count, consecutive to a determinate term of twenty-five years for the attempted murder count. Sentencing Tr. 9-10. The trial court was permitted in this case to impose consecutive sentences. See N.Y. Penal L. § 70.25(2) ("When more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and was also a material element of the other, the sentences ... must run concurrently.")

Moreover, the terms of the consecutive sentences imposed in petitioner's case are within the statutory range prescribed by New York's Penal Law, and in light of his adjudication as a second felony offender, his sentencing claim does not give rise to a question of federal constitutional magnitude cognizable on habeas review. See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."); Fielding

v. LeFevre, 548 F.2d 1102, 1109 (2d Cir. 1977) (A petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court).

**IV.   Conclusion**

For the reasons stated above, Jamar Jones' petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Petitioner has failed to make a "substantial showing of a denial of a constitutional right", 28 U.S.C. § 2253 (c)(2), the court declines the issue of certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:   April 4, 2011
         Rochester, New York